**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| AVENTURE COMMUNICATIONS TECHNOLOGY, L.L.C., an Iowa limited liability company,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>NEXTEL WEST CORPORATION, d/b/a SPRINT, a Delaware corporation, and QWEST COMMUNICATIONS CORPORATION, d/ba QWEST LONG DISTANCE, a Delaware corporation,<br><br>　　　　　Defendants. | No. C 07-4094-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS OR TRANSFER** |

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
　　*A. Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
　　*B. The Motions To Dismiss Or Transfer* . . . . . . . . . . . . . . . . . . . . . . . . 4
　　*C. Arguments Of The Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
　　　　*1.　　The defendants' opening arguments* . . . . . . . . . . . . . . . . . . . 4
　　　　*2.　　Aventure's response* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
　　　　*3.　　The defendants' replies* . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
　　*A. The First-Filed Doctrine* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
　　*B. Applicability Of The Doctrine* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
　　　　*1.　　Parallelism* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
　　　　*2.　　Compelling circumstances* . . . . . . . . . . . . . . . . . . . . . . . . 12
　　　　*3.　　Sufficiency of a stay* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*III.　CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Should this action be dismissed or transferred in favor of an earlier-filed action brought by the defendants in the Southern District of Iowa? In separate motions, the defendants contend that such a disposition is appropriate, but the plaintiff argues, in response, that the court should simply stay the present action until disposition of motions pending in the Southern District litigation. The court must determine whether the "first-filed rule" or certain prudential considerations should prevail in deciding whether or not to defer to the Southern District litigation.

## I. INTRODUCTION

### A. Background

In a Complaint (docket no. 2), filed in this action on October 23, 2007, plaintiff Aventure Communications Technology, L.L.C., (Aventure) alleges that it is a "competitive local exchange carrier" (CLEC) providing telephone and other services to private and business customers. Among other services, Aventure alleges that it provides originating and terminating access services to long distance companies, which allow the long distance companies to transmit long distance calls to the homes and businesses of Aventure's customers. Aventure alleges that the defendants, Nextel West Corporation d/b/a Sprint (Sprint) and Qwest Communications Corporation d/b/a Qwest Long Distance (Qwest), are long distance carriers who have utilized Aventure's originating and terminating services, but have refused to pay for such services as billed in accordance with Aventure's tariffs filed with the Federal Communications Commission (FCC) and Iowa

Utilities Board (IUB). Therefore, Aventure asserts claims for charges accrued but not paid, as well as punitive damages for the defendants' intentional, willful, and malicious failure to pay those charges. The parties all characterize Aventure's action as a "collection" action.

The parties also agree that, approximately six months before Aventure filed this action, Sprint and Qwest (and AT&T Corporation) each brought actions of their own against Aventure and other defendants in the Southern District of Iowa, which have now been consolidated (the Southern District Litigation). In the Southern District Litigation, Sprint and Qwest assert that Aventure and the other defendants have unlawfully billed them for access and/or terminating charges not authorized by the terms of the defendants' tariffs. Thus, Sprint and Qwest contend that, in this action, Aventure seeks recovery on a subset of the charges in dispute in the Southern District Litigation, that is, those charges on which Sprint and Qwest are currently withholding payment.

Aventure has not answered the Complaint in the Southern District Litigation; instead, Aventure filed a Rule 12(b)(6) motion to dismiss or, in the alternative, a motion to dismiss or stay pending a referral to the primary jurisdiction of the FCC. Although the presiding judge in the Southern District Litigation heard oral arguments on Aventure's motion to dismiss, he granted the parties the opportunity to file supplemental briefs in light of the FCC's decision in *Qwest Communications Corp. v. Farmers & Merchants Mutual Telephone Company,* No. EB-07-MD-001. The presiding judge in the Southern District Litigation later postponed the due date for supplemental briefing on pending motions until after the FCC renders its decision on a motion to reconsider in the *Farmers* case. At this point, a status conference in the Southern District Litigation is set for February 11, 2008.

Aventure filed the present lawsuit at about the same time that it moved to extend the briefing schedule on its motion to dismiss in the Southern District Litigation.

### B. The Motions To Dismiss Or Transfer

On November 15, 2007, Sprint filed is Motion For Dismissal, Transfer, Or Stay (docket no. 9) in this litigation, asserting that this litigation is duplicative of the Southern District Litigation, and that this litigation should, therefore, be dismissed or transferred to the Southern District. At the very least, Sprint asks that this court stay this action pending resolution of the Southern District Litigation to avoid duplication of proceedings. Similarly, on November 15, 2007, Qwest filed its Motion To Dismiss Or Transfer Complaint To The United States District Court For The Southern District Of Iowa (docket no. 10), asserting that this litigation is duplicative of the Southern District Litigation and should be dismissed or transferred to avoid wasting judicial resources and resources of the parties, but arguing that a stay pending disposition of motions to dismiss in the Southern District Litigation is not an adequate remedy. Aventure filed the same brief in response to both defendants' motions to dismiss or stay on December 11, 2007 (docket nos. 14 & 15), and the defendants filed separate replies in support of their motions on December 18, 2007, (Sprint's) (docket no. 19) and December 20, 2007, (Qwest's) (docket no. 20). No party requested oral arguments on the motions.

### C. Arguments Of The Parties

#### 1. The defendants' opening arguments

Sprint and Qwest both contend that Aventure's Complaint in this action should be dismissed or stayed pursuant to the "first-filed doctrine," because the Southern District Litigation is "parallel," in that it involves the same primary claim for relief and the same parties. Specifically, the defendants argue that Aventure's primary claim for relief is a compulsory counterclaim to the claims in the Southern District Litigation, involving the defendants' same grounds for withholding payments. Sprint argues that the only reason

4

that Aventure has not already been compelled to asserts its claims here in the Southern District Litigation is that the motion to dismiss in the Southern District Litigation has not yet been resolved, which has tolled the time for Aventure to file an answer and counterclaims. Sprint also argues that there is nothing close to "compelling circumstances" that would warrant ignoring the first-filed rule, where the first action was not filed in response to Aventure's imminent threat of a lawsuit and it is not just a declaratory judgment action asserted as a "preemptive strike." Rather, Sprint contends that its action is for damages as well as declaratory relief. Sprint also points out that Aventure waited over five months before bringing its own suit against Sprint, and did so only after choosing to move to dismiss the Southern District Litigation, rather than respond to the complaint and file any counterclaims in that action. Sprint also argues that it did not mislead Aventure about its own intentions in order to win a race to the courthouse. Sprint argues that no "balance of convenience" or "interest of justice" factors justify deviating from the first-filed rule here. Qwest adds to Sprint's arguments that the Southern District Litigation is advancing toward resolution of legal issues on motions to dismiss filed in that litigation and that the Southern District Litigation will remain pending, even if the presiding judge refers portions of that action to the primary jurisdiction of the FCC. In the alternative, Sprint and Qwest argue that, if this litigation is not strictly speaking "parallel," it should nevertheless be transferred to the Southern District pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses.

   *2.   Aventure's response*

Aventure argues that the first-filed rule does not compel dismissal or transfer of this action to the Southern District, because the two cases are not "parallel" with regard to all parties. Aventure points out that the Southern District Litigation involves numerous other parties as defendants and one other party as a plaintiff. Aventure concedes, however, that

5

if it had filed an answer in the Southern District Litigation, its "collection" claims against Sprint and Qwest would have been compulsory counterclaims in the Southern District Litigation. Nevertheless, Aventure contends that the Southern District Litigation should be dismissed, because the FCC's ruling resolved the issues raised by Qwest and Sprint in the Southern District Litigation or that litigation should be referred to the FCC for further clarification of the scope of its ruling. If the Southern District Litigation is dismissed or referred to the FCC, Aventure contends that it would be required to proceed with its collection action in a new forum. Thus, Aventure asserts that the Southern District Litigation does not provide an appropriate vehicle for assertion of its collection claims. Until the presiding judge in the Southern District rules on the motions to dismiss pending in that litigation, Aventure contends that it is difficult to say that the two actions actually have similar issues. Therefore, Aventure contends that the current posture of the two lawsuits presents a compelling circumstance to deny dismissal or transfer of this action pursuant to the first-filed rule. Aventure argues that a stay of the present litigation is appropriate to await further developments in the Southern District Litigation. Aventure also argues that transfer for inconvenience of this forum pursuant to 28 U.S.C. § 1404 is not appropriate in this case.

### 3. *The defendants' replies*

In their replies, Sprint and Qwest dispute Aventure's assertion that the FCC's ruling in the *Farmers* case has effectively decided the validity of their claims in the Southern District Litigation. Furthermore, they argue that the effect of the FCC's *Farmers* order will be decided by the court in the Southern District Litigation, so that this court does not need to consider the merits of that dispute in order to decide whether to dismiss this action pursuant to the first-filed rule. They also dispute the sufficiency of merely staying this action until the judge in the Southern District Litigation rules on Aventure's motion to

6

dismiss or refer. They argue that the FCC's decision does not resolve all of the claims in the Southern District Litigation, so that there are almost no circumstances under which Aventure could avoid bringing its present claims as compulsory counterclaims in the Southern District Litigation, even if some of the claims in that litigation are referred to the FCC. Thus, the defendants argue that it is simply inappropriate for Aventure's collection claims to go forward or even to be stayed in this forum. To the extent that Aventure is concerned about preserving its choice of forum for its claims, if the defendants' claims are dismissed, the defendants contend that such a concern weighs in favor of dismissal of this collection action.

## II. LEGAL ANALYSIS

### A. *The First-Filed Doctrine*

As the Eighth Circuit Court of Appeals has explained, "'first filed' is not a 'rule.' It is a factor that typically determines, 'in the absence of compelling circumstances,' which of two concurrent federal court actions should proceed to judgment." *Smart v. Sunshine Potato Flakes, L.L.C.*, 307 F.3d 684, 687 (8th Cir. 2002) (quoting *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.,* 920 F.2d 487, 488 (8th Cir. 1990), with quotation marks omitted). In *Central States Industrial Supply, Inc. v. McCullough,* 218 F. Supp. 2d 1073 (N.D. Iowa 2002), this court provided the following concise statement of the "first-filed rule":

> [T]he first-filed rule [provides] as follows:
> > The well-established rule is that in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to consider the case." *Orthmann v. Apple River Campground Inc.,* 765 F.2d 119, 121 (8th Cir. 1985). This first-filed rule "is not intended to be rigid, mechanical, or inflexible," *Orthmann,* 765

7

> > F.2d at 121, but is to be applied in a manner best serving the interests of justice. The prevailing standard is that "in the absence of compelling circumstances," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 675 F.2d 1169, 1174 (11th Cir. 1982), the first-filed rule should apply.
>
> *Northwest Airlines v. American Airlines,* 989 F.2d 1002, 1005 (8th Cir. 1993) (quoting *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.,* 920 F.2d 487, 488-89 (8th Cir. 1990)); *see Keymer v. Management Recruiters Int'l, Inc.,* 169 F.3d 501, 503 n. 2 (8th Cir. 1999) (stating this rule and citing *Northwest Airlines*); *Midwest Motor Express, Inc. [v. Central States Southeast and Southwest Areas Pension Fund],* 70 F.3d [1014,] 1014 [ (8th Cir. 1995)]; *Boatmen's First Nat'l Bank of Kansas City v. Kansas Pub. Employees Retirement Sys.,* 57 F.3d 638, 641 (8th Cir. 1995) (same). Thus, the first-filed rule requires that the concurrent cases be brought by the same parties and embrace the same issues. *See Midwest Motor Express,* 70 F.3d at 1017; *accord Keymer,* 169 F.3d at 503 n.2 ("The first-filed rule gives priority, when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction in order to conserve judicial resources and avoid conflicting rulings."); *Anheuser-Busch, Inc. v. Supreme Int'l Corp.,* 167 F.3d 417, 419 (8th Cir. 1999) ("The well-established rule is that in cases of concurrent jurisdiction, 'the first court in which jurisdiction attaches has priority to consider the case.'") (quoting *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.,* 920 F.2d 487, 488 (8th Cir. 1990)) (internal quotations omitted).

*Central States Indus. Supply, Inc.,* 218 F. Supp. 2d at 1091-92; *see also Williams v. Security Nat'l Bank*, 314 F. Supp. 2d 886, 895-96 (N.D. Iowa 2004) (also quoting *Central States*).

### B. Applicability Of The Doctrine

#### 1. Parallelism

The first step in the court's determination of whether or not this case is subject to the "first-filed doctrine" is whether this lawsuit and the Southern District Litigation are "parallel." *See Central States Indus. Supply, Inc.*, 218 F. Supp. 2d at 1091-92 (noting that parallelism is a requirement of the first-filed rule as well as for *Colorado River* abstention). The court finds no discussion by the Eighth Circuit Court of Appeals of the "parallelism" requirement since this court considered it in *Central States*. Therefore, this court again looks to its own prior decision for a summary of applicable standards

As this court explained in *Central States,* the "parallelism" analysis "looks at the two proceedings as they currently exist, not as they could be modified to mirror each other." *Id.* at 1086 (citing *Baskin v. Bath Township Bd. of Zoning Appeals,* 15 F.3d 569, 572 (6th Cir. 1994), and considering "parallelism" as a requirement of both the "first-filed rule" and *Colorado River* abstention). Thus, "even where the claims arose out of 'the same basic facts,' . . . 'parallelism' [is considered] in terms of whether one of the actions, as it then existed, could afford 'complete relief.'" *Id.* at 1087 (citing *Baskin,* 15 F.3d at 572). While some courts require "identity" of issues, others find the "parallelism" requirement is satisfied by "*substantially* the same parties" litigating "*substantially* the same issues." *Id.* (emphasis in the original). Even so, "all courts appear to agree that mere 'commonality of subject matter does not amount to the "contemporary exercise of concurrent jurisdictions."'" *Id.* (quoting *Dittmer v. County of Suffolk,* 146 F.3d 113, 118 (2d Cir. 1998), in turn quoting *Kirkbride v. Continental Cas. Co.,* 933 F.2d 729, 734 (9th Cir. 1991)). Thus, courts consider, for example, whether the two actions involve "'different issues with different requisites of proof,'" in which case, they are not "parallel." *Id.* (quoting *Gannett Co., Inc. v. Clark Constr. Group, Inc.,* 286 F.3d 737,

742 (4th Cir. 2002)). Courts have also held that actions in which "'each party's claims in one case were defenses in the other'" were not "parallel," where the "central issues" in the two cases differed. *Id.* at 1088 (quoting *Al-Abood v. El-Shamari,* 217 F.3d 225, 232-34 (4th Cir. 2000)). On the other hand, two cases *are* "parallel," for example, where the primary claim for relief in one action will be raised and decided in the other, and the parties are the same in both suits. *Id.* (citing *National Union Fire Ins. Co. of Pittsburgh v. Karp,* 108 F.3d 17, 22 (2d Cir. 1997)).

The circumstances here differ considerably from those presented, for example, in *Williams*, in which this court found that mere appearance of the parties in both actions and the fact that the claims in one proceeding *could have been brought* in the other did not render the proceedings "parallel." *Williams*, 314 F. Supp. 2d at 900. Here, Aventure concedes that its "collection" claims would be *compulsory* counterclaims in the Southern District Litigation, which involves the same parties and some additional parties. Thus, more than mere "commonality" of subject matter is at issue here. *See id.* (citing *Central States*, 218 F. Supp. 2d at 1087, which states, "[C]ommonality of subject matter does not amount to the contemporary exercise of concurrent jurisdictions."). To put it another way, it is clear that "complete relief" on the claims at issue could be and necessarily would be afforded in the Southern District Litigation, *see Central States*, 218 F. Supp. 2d at 1087 ("[E]ven where the claims arose out of 'the same basic facts,' . . . 'parallelism' [is considered] in terms of whether one of the actions, as it then existed, could afford 'complete relief.'") (citing *Baskin,* 15 F.3d at 572), and such relief would be rendered on the long distance companies' claims of improper charges and Aventure's collection claims (or counterclaims) by considering essentially the same legal standards. *Compare id.* (courts consider, for example, whether the two actions involve "'different issues with

10

different requisites of proof,'" in which case, they are not "parallel") (quoting *Gannett Co., Inc.*, 286 F.3d at 742).

Aventure's contention that the Southern District Litigation involves additional parties and additional claims does not mean that the two actions are not "parallel" as to the parties involved in this action, where the claims here are clearly a subset of the claims at issue between the present parties in the Southern District Litigation. *Id.* (some courts find the "parallelism" requirement is satisfied by "*substantially* the same parties" litigating "*substantially* the same issues") (emphasis in the original). Finally, the court is not persuaded by Aventure's contention that the Southern District Litigation ultimately *might not* involve "parallel" claims. Again, the "parallelism" analysis "looks at the two proceedings as they currently exist, not as they could be modified to mirror each other." *Id.* at 1086 (citing *Baskin,* 15 F.3d at 572). The converse is also true: The question is whether the two proceedings as they currently exist mirror each other, not whether subsequent events might modify the actions so that they might no longer be "parallel." Moreover, this court believes that the questions of whether or not the FCC's ruling in *Farmers* resolves the long distance companies' claims or whether those claims should be referred to the primary jurisdiction of the FCC are not properly before this court, so that it is not proper for this court to hypothesize about whether the Southern District Litigation might be altered in such a way that Aventure's claims here would no longer be "parallel" to claims before the court in the Southern District Litigation.

In short, the court finds that the two actions are "parallel," and there is no dispute that the Southern District Litigation is the "first-filed" action. Thus, the question is whether "compelling circumstances" suggest that this action should, nevertheless, proceed. *See Smart*, 307 F.3d at 687 ("'[F]irst filed' . . . is a factor that typically determines, 'in the absence of compelling circumstances,' which of two concurrent federal court actions

should proceed to judgment.") (quoting *U.S. Fire Ins. Co.*, 920 F.2d at 488, with quotation marks omitted).

### 2. *Compelling circumstances*

The first-filed rule is not to be "mechanically" applied, *see Boatmen's First Nat'l Bank of Kansas City v. Kansas Pub. Employees Retirement Sys.,* 57 F.3d 638, 641 (8th Cir. 1995); *Northwest Airlines v. American Airlines,* 989 F.2d 1002, 1005 (8th Cir. 1993), but should give way to "compelling circumstances" requiring a result different from that obtained by applying the rule. *Midwest Motor Express, Inc. v. Central States Southeast and Southwest Areas Pension Fund,* 70 F.3d 1014, 1017 (8th Cir. 1995); *Boatmen's First Nat'l Bank,* 57 F.3d at 641; *Northwest Airlines,* 989 F.2d at 1005 ("The rule . . . yields to the interests of justice, and will not be applied where a court finds 'compelling circumstances' supporting its abrogation."). In *MidAmerican Energy Co. v. Coastal Gas Marketing Co.*, 33 F. Supp. 2d 787 (N.D. Iowa 1998), and *Brower v. Flint Ink Corp.*, 865 F. Supp. 564 (N.D. Iowa 1994), this court categorized and synthesized what constitutes "compelling circumstances" as follows:

> The Eighth Circuit Court of Appeals has . . . recognized two specific factual circumstances in which it will find an exception to the "first-filed rule" and allow the second suit to continue: (1) where the plaintiff in the first-filed action was able to file first only because it had misled the filer of the second-filed action as to its intentions regarding filing suit in order to gain the advantages of filing first; and (2) where the second-filed action is a continuation of a legal process already begun in that court even though another action concerning the same issues has been filed in between in another court and is therefore ostensibly the first-filed action.

*Brower*, 865 F. Supp. at 569; *MidAmerican Energy Co.*, 33 F. Supp. 2d at 792 (quoting *Brower*).

Again, Aventure's contention that the Southern District Litigation might be altered by subsequent rulings or developments does not constitute a "compelling circumstance" for this action to continue in this forum, where the question of "parallelism" of the two actions must be resolved as the actions currently exist. *See Central States*, 218 F. Supp. 2d at 1086. Furthermore, there is, as Sprint contends, absolutely no evidence that Sprint and Qwest were able to file their actions first in the Southern District only because they misled Aventure as to their intentions regarding filing suit in order to gain the advantages of filing first. *See Brower*, 865 F. Supp. at 569 (first example of "compelling circumstances"). Indeed, Aventure did not file the present action until at least five months after the Southern District Litigation was commenced and only after attempting to dismiss or stay that action. The present action may also be characterized as a continuation of the legal process already begun *in the Southern District*, rather than a continuation of one begun in this court, because it asserts a subset of issues already before the court in the Southern District Litigation. *Compare id*. (a second example of "compelling circumstances" is where the ostensibly second-filed action is a continuation of a legal process *in the same court* begun before the ostensibly first-filed action was filed in another court). Thus, if anything, it is Aventure that is belatedly shopping for a different forum for the resolution of issues already joined in the Southern District Litigation.

Therefore, the court finds no "compelling circumstances" that would counsel against deferring to the first-filed action in the Southern District.

### 3. *Sufficiency of a stay*

Aventure argues that a stay of the present proceeding is appropriate until resolution of pending motions in the Southern District Litigation determines what claims will actually proceed in that forum. The court, however, agrees with Sprint and Qwest that a stay is not an appropriate course here, where Aventure has conceded that its claims in this action

are compulsory counterclaims to the claims in the Southern District Litigation as that litigation now exists. *See Central States*, 218 F. Supp. 2d at 1086 (the question of "parallelism" of the two actions must be resolved as the actions currently exist). Such a "wait-and-see" approach could undermine the predictability of application of the first-filed doctrine and, perhaps more importantly, would be unlikely to advance the interests of justice in the present circumstances. *See Northwest Airlines*, 989 F.2d at 1005 (the first-filed rule is "well-established," but is to be applied "in a manner best serving the interests of justice"). Whatever happens in the Southern District Litigation, Aventure will not be deprived of an available and appropriate forum for its collection claims if this action is transferred to the Southern District, but will, instead, be able to prosecute those claims in a forum and in an action that is already addressing substantially similar if not identical issues. Therefore, the court does not find that a stay is an appropriate alternative to the timely application of the first-filed doctrine in this case, and the long distance companies' motions to transfer this action to the Southern District of Iowa will be granted.

### III. CONCLUSION

Upon the foregoing, the court concludes that this action and the pending action in the Southern District of Iowa involving the same parties are "parallel" and that no "compelling circumstances" counsel against application of the first-filed doctrine to transfer the present action to the Southern District. The court concludes, further, that a stay of the present action to wait and see what will happen in the Southern District Litigation is not appropriate, because a stay will not better serve the interests of justice in this case.

THEREFORE, Sprint's November 15, 2007, Motion For Dismissal, Transfer, Or Stay (docket no. 9) and Qwest's November 15, 2007, Motion To Dismiss Or Transfer

Complaint To The United States District Court For The Southern District Of Iowa (docket no. 10) are **both granted** to the extent that **this action will be and hereby is transferred to the Southern District of Iowa** pursuant to the "first-filed" doctrine.

**IT IS SO ORDERED.**

**DATED** this 3rd day of January, 2008.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA